UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Boo, Inc., Civ. File No. 00-1872 (PAM/JGL)

Plaintiff,

v. **MEMORANDUM AND ORDER**

Boo.com Group Ltd., Boo.com North America, Inc., and Fashionmall.com, Inc.,

Defendants.

---

This matter is before the Court on a Motion for Summary Judgment filed by Defendant Fashionmall.com, Inc. ("Fashionmall"). Shortly after Fashionmall's Motion was noticed, Plaintiff moved to dismiss Defendants Boo.com Group Ltd. and Boo.com North America, Inc. (neither of which had ever been served with the Complaint), and to add E-com, Inc. as a Defendant. Because the Court finds that Plaintiff has failed to prove its claims of trademark infringement, trademark dilution, and unfair competition, the Court will grant summary judgment to Fashionmall in all respects, will dismiss the Boo.com Defendants, and will deny the remainder of Plaintiff's Motion as moot.

## BACKGROUND

Plaintiff Boo, Inc. is a Minnesota corporation that, from 1990 until 1999, was engaged in the business of selling children's and adult clothing and accessories. Although Plaintiff

FEB 2 2 2002
FILED
RICHARD D. SLETTEN, CLERK FEB 2 2 200
JUDGMENT ENTD
DEPUTY CLERK

insists that it is still a viable entity, the evidence adduced during discovery shows that Plaintiff no longer has any full-time employees, that the owners of Plaintiff no longer perform any day-to-day functions, and that Plaintiff no longer produces any income. It is undisputed that Plaintiff has never taken any steps to register the trademark "Boo."

Defendant Boo.com Group Limited and Boo.com North America, Inc. (collectively, "Boo.com") launched the first boo.com internet website in 1999. As with many websites, boo.com did not flourish, and in 2000, each Boo.com entity filed for bankruptcy. In May 2000, Fashionmall's wholly owned subsidiary E-com, Inc. purchased the boo.com domain name and other intellectual property assets, including trademarks and trademark applications, at an auction conducted during the liquidation proceedings for Boo.com Group Limited. Plaintiff contends that in the spring of 2000 it had been negotiating with Boo.com over the use of the boo.com domain name, but that such discussions did not bear fruit.[1]

After Fashionmall's subsidiary purchased the boo.com name, it proceeded to develop a new boo.com website. That website would not sell any products, but would rather be a portal site that offers a "click-through" service for clothing retailers. The new boo.com website launched in October 2000.

---

[1] The Court is disturbed by several false statements in the Complaint. Although some of the erroneous statements may be attributed to typographical errors, others are simply incorrect statements of the facts. For example, the Complaint claims that Plaintiff registered the internet domain name "www.boo.fashion.com." (Compl. ¶ 15.) However, during discovery, one of Plaintiff's owners conceded that Plaintiff had never registered this, or any other, domain name. (Pontius Dep. at 139, 149-50.) The Court reminds Plaintiff and counsel of the obligation to verify information contained in pleadings prior to submitting such to the Court. See Fed. R. Civ. P. 11.

Plaintiff now asserts that the name boo.com infringes on Plaintiff's common-law trademark in the name "Boo." According to Plaintiff, there has been a "flood of inquiries" about whether Plaintiff is related to boo.com, evidencing the confusion in the marketplace. Plaintiff also raises claims of trademark dilution, unfair competition, and violation of the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44. During the pendency of the litigation, the Patent and Trademark Office approved registration of Fashionmall's trademark in the name "Boo." (Jan. 22, 2002, letter from Dan Chorost to Court.)

**DISCUSSION**

**A. Trademark Infringement**

To succeed on its trademark infringement claim, Plaintiff must show that it has a valid common-law trademark and that there is a likelihood of confusion between Plaintiff's mark and the alleged infringing use by the defendant. See, e.g., Aveda Corp. v. Evita Mktg., Inc., 706 F. Supp. 1419, 1426 (D. Minn. 1989) (setting forth elements of federal trademark infringement claim). Here, Fashionmall seems to assume for the purposes of its Motion that Plaintiff has (or had) a valid common-law trademark in the name Boo, Inc. Thus, the infringement inquiry will depend on whether there is a likelihood of confusion between Boo, Inc. and Fashionmall's use of Boo.com.

To determine whether there is a likelihood of confusion, courts should examine the following factors:

> (1) the strength of the trademark; (2) the similarity between the parties' marks; (3) the competitive proximity of the parties' products; (4) the alleged infringer's intent to confuse; (5) evidence of actual confusion; and (6) the degree of care reasonably expected of potential customers.

Duluth News-Tribune v. Mesabi Pub. Co., 84 F.3d 1093, 1095 (8th Cir. 1996) (citing SquirtCo, Inc. v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1980).) Resolution of the likelihood of confusion issue "does not hinge on a single factor, but requires consideration of [all of the] factors to determine whether under all the circumstances there is a likelihood of confusion." SquirtCo, 628 F.2d at 1091.

Plaintiff's trademark infringement claims fail because, aside from the similarity between the parties' marks, all of the remaining factors show that there is not a likelihood of confusion.

1. Strength of the mark

Part of the inquiry into a mark's strength focuses on the characteristics of the mark itself. It if it is a fanciful mark, it is deemed strong and is entitled to the highest level of protection. Duluth News-Tribune, 84 F.3d at 1096. A descriptive mark, on the other hand, is generally not considered strong and is not entitled to great protection. Id. In this case, the Court finds that Plaintiff's mark is suggestive, which requires "some amount of imagination to reach a conclusion regarding the nature of the product." Mars Musical Adventures, Inc. v. Mars, Inc., 159 F. Supp.2d 1146, 1150 (D. Minn. 2001) (Davis, J.). Thus, Plaintiff's mark is somewhat strong and is entitled to some protection.

The strength inquiry also examines the mark's commercial strength in the marketplace. Rainforest Café, Inc. v. Amazon, Inc., 86 F. Supp.2d 886, 898 (D. Minn. 1999) (Davis, J.). Here, the parties dispute whether Plaintiff was known outside the upper midwest and the extent of Plaintiff's advertising expenditures. Although Plaintiff claims to be well-known in Canada, Japan, England, France, and both the eastern and northern sections of the U.S. and California, there is no evidence in the record that Plaintiff made any sales in any foreign country, nor is there evidence that Plaintiff made advertising expenditures outside the upper midwest. Plaintiff's limited geographic identity is evidence that Plaintiff's mark is not strong.

Moreover, the evidence shows that Plaintiff has not conducted any business since 1999. Thus, even if Plaintiff had a strong mark prior to 1999, the strength of Plaintiff's mark was undoubtedly seriously diminished by its disappearance from the marketplace. Because this disappearance happened at about the same time as the first boo.com website was launched, the weakening of the mark caused by Plaintiff's withdrawal from business is further evidence that Plaintiff's mark is not strong for the purposes of the likelihood of confusion inquiry.

2. Similarity between the marks

Fashionmall argues that parties' marks are not similar. This argument strains credulity. "Boo" and "boo.com" are nearly the same word, and Fashionmall's trademark

registration for the name "Boo" belies its assertion that "boo.com" is not similar to "Boo." The marks are identical for the purposes of the likelihood of confusion analysis.

3. Competitive proximity of the parties' products

The overwhelming evidence in this case is that Fashionmall's boo.com does not compete with any of Plaintiff's former products. Boo.com is a portal site that does not offer any product for sale. Although it is related to clothing in that the content of the site consists of various online clothing merchants, the site itself is not a retailer. Thus, the parties' products are not in competitive proximity with one another. Moreover, Fashionmall's use of boo.com did not begin until October 2000, well after Plaintiff ceased doing business. This factor weighs against a likelihood of confusion.

4. Fashionmall's intent to confuse

There is absolutely no evidence that Fashionmall intended to confuse the public by adopting the boo.com domain name. Indeed, the evidence shows that Fashionmall was not aware of the existence of Plaintiff before Plaintiff instituted this lawsuit. This factor weighs against a likelihood of confusion.

5. Evidence of actual confusion

Plaintiff contends that it has been "flooded" with calls from confused customers. However, as Fashionmall notes, Plaintiff has provided the Court with no admissible evidence showing that any customers were in fact confused. See Mars Musical Adventures, 159 F. Supp.2d at 1151-52 (finding affidavits of misdirected e-mails, phone calls, and the

like was inadmissible hearsay evidence). The record thus contains no evidence of actual confusion. This factor weighs against a likelihood of confusion.

6. Degree of care

The evidence shows that any potential customer of Fashionmall would tend to exercise great care, because such customers pay large fees to be included on thc boo.com site. On the other hand, Plaintiff's customers, to the extent that Plaintiff still has customers, likely would exercise less care when purchasing the products formerly offered by Plaintiff, because such products were not terribly costly. At best, then, this factor is neutral in the likelihood of confusion analysis.

7. Conclusion

The SquirtCo factors, taken as a whole, show that Plaintiff has failed to establish that genuine issues of fact exist on its contention that there is a likelihood of confusion between its mark and Fashionmall's mark. Plaintiff's trademark infringement claim must be dismissed.

**B. Trademark Dilution**

To prevail on its trademark dilution claim, Plaintiff must prove that:

1. the marks at issue were famous before Fashionmall began use of the domain name at issue; and

2. Fashionmall's use causes dilution of the distinctiveness of the marks.

15 U.S.C. § 1125(c). Dilution is "the lessening of the capacity of a famous mark to identify and distinguish goods or services." Id. § 1127.

As discussed above, there is scant evidence in the record that Plaintiff's mark was "famous" or strong before Fashionmall began boo.com. Moreover, given that Plaintiff has not used its mark in commerce since well before Fashionmall launched boo.com, Plaintiff cannot show that Fashionmall's use causes dilution of Plaintiff's mark. Plaintiff's trademark dilution claim fails.

### C. Unfair Competition and Deceptive Trade Practices

Because Plaintiff's unfair competition and Deceptive Trade Practices claims depend on the success of its infringement and dilution claims, those claims must also be dismissed. Specifically, to prove either unfair competition or a violation of the Deceptive Trade Practices Act, Plaintiff must show a likelihood of confusion. Mars Musical Adventures, 159 F. Supp.2d at 1153. Plaintiff has failed to show a likelihood of confusion, and thus its unfair competition and Deceptive Trade Practices claims fail as a matter of law.

## CONCLUSION

Based on the files, record, and proceeding herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Dismiss and to Add Defendant (Clerk Doc. No. 19) is **GRANTED in part** and **DENIED in part** as follows:

   a. Defendants Boo.com Group Ltd. and Boo.com North America, Inc. are **DISMISSED**; and

   b Plaintiff's Motion to add E-com, Inc. as a Defendant is **DENIED as moot**; and

2. Defendant's Fashionmall.com, Inc.'s Motion for Summary Judgment (Clerk Doc. No. 26) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 21, 2002

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*